```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

JORF LASFAR ENERGY         )
COMPANY, S.C.A.            )
        Plaintiff,         )
                           )
    v.                     ) Civil Action No. 05-0423
                           )
AMCI EXPORT CORPORATION,   )
        Defendant.         )

MEMORANDUM

Gary L. Lancaster,
District Judge.                                May 5, 2006

This is an action to confirm a foreign Arbitral Award. An Arbitral Tribunal located in France awarded plaintiff, Jorf Lasfar Energy Company, S.C.A. ("JLEC"), more than $7 million against defendant, AMCI Export Corporation ("AMCI"), on a breach of contract claim. Defendant AMCI appealed that Award to the appropriate court in Paris, France. On the same day, plaintiff JLEC filed this action to confirm the Arbitral Award under The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention").

Following oral argument, on December 22, 2005, this court stayed this action pending the direct appeal of the Arbitral Award in France, provided that AMCI post adequate security. AMCI failed to post security. As a result, upon JLEC's motion, we lifted the stay. JLEC then filed the instant motion to confirm the Arbitral

1

Award [doc. no. 46].  For the reasons that follow, JLEC's motion will be granted.

I.    FACTUAL BACKGROUND

Detailed background facts regarding this dispute are summarized in our December 22, 2005, memorandum and order [doc. no. 34].  The facts relevant to the motion now before the court are as follows.  JLEC initiated arbitration in Paris, France seeking recovery of damages caused by AMCI's alleged breach of a coal supply agreement.  Following receipt of AMCI's Points of Defense, the Arbitral Tribunal issued Procedural Order No. 4.  In it, the Tribunal directed[1] the parties to submit all documentary evidence in support of their positions, and witness statements for all persons who wished to testify by December 20, 2004.  AMCI acknowledged its understanding of Procedural Order No. 4 in an electronic mail communication to the Tribunal dated October 29, 2004, in which it stated that the Order "clearly provides that the parties must submit all documents they wish to rely on by 20th December."

---

[1] AMCI claims that the Tribunal did not require such submissions, but instead only "invited" them.  Whatever the common meaning of the term "invite" may be in this country, or any other, it is clear that under the UNCITRAL Rules, the term "invite" indicates a requirement.  For instance, under Article 28.3 (Default), failure to produce evidence after being "duly invited" to do so, allows a tribunal to make an award based on the evidence before it.

2

On December 20, 2004, AMCI submitted a letter in which it "reiterated" its Points of Defense and attached, as documentary evidence, a French governmental report summarizing coal supply shortages and price increases around the time of AMCI's alleged breach.  AMCI did not submit any witness statements.  In the December 20, 2004 submission, AMCI stated that "[w]e remain at the Arbitrators' disposal for any oral hearing they might wish to call in this case."  However, on January 6, 2005, AMCI explicitly requested that an oral hearing be scheduled, indicating that Mr. Thrasher would testify.  In Procedural Order No. 7, the Tribunal found that a hearing was not warranted because AMCI had waived its right to request a hearing by its December 20th submission, and had failed to submit a witness statement for Mr. Thrasher, as required by Procedural Order No. 4.

Therefore, the Tribunal decided this dispute on the papers, and awarded JLEC more than $7 million in damages, interest, attorneys' fees, and expenses.  AMCI appealed the Award to the appropriate court in Paris, France.  That appeal is currently pending.  On the same day that AMCI filed the French appeal, JLEC filed this action to confirm the Arbitral Award.  AMCI resists confirmation of the Award on the grounds that the Arbitral Tribunal denied it the opportunity to present its case, and that the Award is not yet binding due to the pending appeal in France.

II. <u>APPLICABLE LAW</u>

Under Article III of the Convention, a contracting state "shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon." The Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. III, June 10, 1958, 21 U.S.T. 2517, 1970 WL 104417. A district court's role in reviewing a foreign arbitration award is strictly limited, so that "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C.A. § 207. Article V of the Convention enumerates seven grounds on which a district court may refuse enforcement. Convention art. V. Those grounds include, among others, that the arbitrators denied a party the opportunity to present its case, that the award is not yet binding, and that enforcement of the award would be contrary to the public policy of the enforcing state. Convention art. V(1)(b), V(1)(e), V(2)(b), respectively.

Our Court of Appeals interprets the Convention narrowly and has recognized that the defenses listed in Article V of the Convention are the only grounds available for setting aside an arbitral award. <u>China Minmetals Materials Imp. and Exp. Co., Ltd. v. Chi Mei Corp.</u>, 334 F.3d 274, 283 (3d Cir. 2003). The party opposing enforcement has the burden of proving the existence of one

of the enumerated defenses.  <u>Europcar Italia, S.p.A. v. Maiellano Tours, Inc.</u>, 156 F.3d 310, 313 (2d Cir. 1998); <u>Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc.</u>, 969 F.2d 764, 770 (9th Cir. 1992); <u>Imperial Ethiopian Gov't v. Baruch-Foster Corp.</u>, 535 F.2d 334, 336 (5th Cir. 1976).

III. <u>DISCUSSION</u>

AMCI raises three defenses to enforcement of the Arbitral Award: first, that it was unable to present its case; second, that the Award is not yet binding; and third, that recognition of the Award would be against public policy.  Defendant's Opposition to Renewed Motion to Confirm at p. 8 [doc. no. 57].  If proven, these are valid grounds on which to resist enforcement under Article V of the Convention.

    A.   <u>Inability to Present Case/Public Policy Violation</u>

AMCI contends that this court should not enforce the Arbitral Award because the Tribunal's decision to not hold a hearing denied it the opportunity to present its case [Art. V(1)(b)], and violated our public policy of due process of law [Art. V(2)(b)].  The Article V(1) defense applies where the arbitral process fails to comply with our standards of fundamental fairness.  The Article V(2) defense applies where the enforcement of the arbitral award would violate our most basic notions of morality and justice.

Under these standards, the only question that we must answer is whether defendant has sustained its burden to prove that the Tribunal's refusal to hold an oral hearing violates our basic notions of fundamental fairness and justice. We find that AMCI has failed to carry its burden.

AMCI claims that under Rule 15.2[2] of the Arbitration Rules for the United Nations Commission on International Trade Law ("UNCITRAL Rules"), it had the right to request an oral hearing at any time. According to AMCI, because it requested an oral hearing on January 6, 2005, the Tribunal's refusal to hold one must violate our notions of fundamental fairness and justice. We disagree. AMCI was given a full and fair opportunity to present its case. However, AMCI failed to meet its obligations under the Tribunal's procedural orders,[3] and suffered the consequences. It failed to submit any witness statements by the deadline set forth by the Tribunal. Rather, AMCI attempted to name Mr. Thrasher as a witness after the deadline, and without submitting a witness statement. AMCI submitted no documentary evidence save a governmental report indicating that coal was in short supply around the time of the

---

[2] Rule 15.2 reads: "If either party so requests at any stage in the proceedings, the arbitral tribunal shall hold hearings for the presentation of evidence by witnesses, including expert witnesses, or for oral argument."

[3] Notably, around this same time, AMCI also failed to pay its share of the arbitration costs, forcing JLEC to cover its opponent's expenses in order to avoid termination of the arbitration. <u>See</u> Procedural Order No. 6.

alleged breach.

AMCI requested an oral hearing only after indicating that it would be available for any hearing that the Tribunal decided to call in the matter. Regardless of whether AMCI waived its right to a hearing by making that statement, the uncontested fact is that, under the rules and procedures established by the Tribunal, AMCI would have had no evidence to present at the hearing. Although AMCI has argued elsewhere in this case that it would have presented substantial evidence at a hearing regarding "the facts of the _force majeure_ events", its decision process on "sourcing coal from South Africa", and other matters, all such evidence would have been excluded because it was not submitted in accordance with Procedural Order No. 4. AMCI's Opposition to Motion to Confirm Arbitration Award at pp. 7-8 [doc. no. 15]; AMCI's Opposition to Renewed Motion to Confirm Arbitration Award at p. 6 [doc. no. 57]. The requirements of Procedural Order No. 4 are clear, reasonable, and common in international arbitration practice. There is no dispute that AMCI understood what the Order required at the time. A party cannot purposefully ignore the procedural directives of a decision-making body, and then successfully claim that the procedures were fundamentally unfair, or violated due process.

Under the circumstances, we find that AMCI has failed to satisfy its burden to prove that the arbitral process violated our basic notions of fundamental fairness and justice. As such, AMCI

cannot avail itself of either the Article V(1)(b) defense or the Article V(2)(b) defense.

### B. Award is not Binding

AMCI also claims that the Award should not be confirmed because it is not yet binding. Although AMCI refers to this Article V(1)(e) defense in its opposition, it provides no evidence, legal standard, or argument in support of it. As such, there is no basis on which to find that AMCI has sustained its burden on this defense, and we can summarily dispose of it.

Instead of demonstrating why the Award is not yet binding, as it is required to do under Article V(1)(e), AMCI argues that this action should be stayed pending resolution of the direct appeal pending in France. We have already carefully considered the issue of imposing a stay in this case under the appropriate standards. Under those standards we found that a stay was appropriate, provided AMCI posted adequate security. AMCI failed to post security, so we lifted the stay. We need not, and will not, revisit this issue.

However, even were we to consider the Article V(1)(e) defense on its merits, we would conclude that it is inapplicable to this case. Under the Convention, the term "binding" means that no further appeals are available within the arbitration process itself, as opposed to possible judicial appeals. See e.g.

Fertilizer Corp. Of India v. IDI Mgmt., Inc., 517 F.Supp. 948, 957-58 (S.D. Ohio 1981). An action to set aside an award in a foreign court does not make an award not "binding" under the Convention. Alto Mar Girassol v. Lumbermens Mut. Cas. Co., 2005 WL 947126, *3-4 (N.D. Ill. Apr. 12, 2005). The appeal pending in France is a judicial, not an arbitral, appeal. Therefore, under the appropriate standards, the Article V(1)(e) defense would not apply to this case.

IV.  CONCLUSION

Because AMCI has failed to sustain its burden under any of the Article V defenses, we will confirm the Arbitral Award. While we recognize that this creates the possibility of inconsistent judgments, which we specifically sought to avoid by issuing the stay in December, that is the risk that AMCI decided to bear when it failed to post security. An appropriate order will follow.

BY THE COURT,

_____, J.

cc: All Counsel of Record